JOSEPH D. WILLIAMS II, MINOR BY GUARDIAN AD LITEM JOSEPH D. WILLIAMS v. WACHOVIA BANK AND TRUST COMPANY, EXECUTOR OF ESTATE OF JOHN WALDROP WILLIAMS

JOSEPH D. WILLIAMS, INDIVIDUALLY v. WACHOVIA BANK AND TRUST COMPANY, EXECUTOR OF ESTATE OF JOHN WALDROP WILLIAMS

### No. 77

### (Filed 14 April 1977)

1. **Automobiles § 108— family purpose doctrine — requirements for applicability**

    The family purpose doctrine imposes liability upon the owner or person with ultimate control of a motor vehicle for its negligent operation by another when it is shown (1) that the operator was a member of his family or household and was living in his home, (2) that the vehicle was owned, provided and maintained for the general use, pleasure and convenience of his family, and (3) that the vehicle was being so used by a member of his family at the time of the accident with his express or implied consent.

2. **Automobiles § 108.1— family purpose doctrine — motorcycle as motor vehicle**

    A motorcycle is a motor vehicle for purposes of the family purpose doctrine, since it is a self-propelled vehicle designed and intended for operation upon the public highways.

3. **Automobiles § 108.1— motorcycle on private property — applicability of family purpose doctrine**

    The family purpose doctrine is applicable to accidents involving the operation of a motorcycle upon private property.

4. **Automobiles §§ 41.1, 41.2— children on highway or private property — duty of motorist**

    The presence of small children on or near a street is a danger signal to a motorist who must bear in mind that children have less capacity to avoid danger than adults, and the motorists is, therefore, required to use the care a reasonable man would exercise under such circumstances. This duty of increased vigilance is also required when a vehicle is being operated on private property.

5. **Automobiles § 63.3— motorcycle striking child on private property — sufficiency of evidence of negligence**

    In an action to recover for injuries sustained by minor plaintiff when he was struck by a motorcycle operated by a fourteen year old on private property, evidence was sufficient to support a reasonable inference by the jury that the boy was operating the motorcycle at a greater rate of speed than was reasonable or prudent under the circumstances and that he failed to keep a proper lookout where such

Williams v. Trust Co.

evidence tended to show that the fourteen year old was operating the motorcycle belonging to his father and furnished to him for his use and pleasure across the front yard of a home in which he knew little children lived and played; he had been told not to operate the vehicle on these premises; he was operating his motorcycle at a speed of about 15 mph along a path which had been created by his motorcycle and the motorcycle of one of his friends; although his vision was momentarily obstructed by a bush, he failed to decrease his speed before he saw the child and was forced to apply his brakes suddenly; and by own admission his brakes were of little value under these conditions.

ON petition for discretionary review of the decision of the Court of Appeals reported in 30 N.C. App. 18, 226 S.E. 2d 210, reversing the judgment entered by *Lanier, J.,* at the 8 September 1975 Session of the Superior Court of PITT County. This case was argued and docketed as Case No. 117 in the Fall Term 1976.

This action was instituted by Joseph D. Williams as Guardian Ad Litem for his minor child, Joseph D. Williams II, to recover damages for injuries suffered by his minor son when he was struck by a motorcycle owned by John Waldrop Williams, deceased, and operated by his fourteen-year-old son, Johnathan David Williams (David). Joseph D. Williams instituted a separate action to recover for medical expenses incurred as a result of the accident. The cases were consolidated for trial.

Plaintiff's evidence, summarized except where quoted, is as follows: On 5 May 1972, between the hours of 4:00 and 6:00 p.m., David Williams was riding a Honda SL 100 motorcycle on a path through the yard of plaintiff, Joseph D. Williams. This path was about ten feet from the public street and had been cut through the grass by motorcycles operated by David and a friend. David could not operate the motorcycle on a public highway because he was not old enough to obtain a license. However, he rode the vehicle nearly every day either on a vacant lot or a nearby tobacco field. He had crossed the Joseph Williams' yard ten or twelve times in order to reach one of these places without riding on a public street. Mrs. Joseph D. Williams testified that she had told David not to ride across her yard. David denied that he had been so ordered. The motorcycle which David operated was capable of a speed of sixty miles per hour and was owned by David's father, John Waldrop Wil-

liams, who furnished it to David for his use and pleasure. At trial David testified:

> I recall going through the Joseph Williams yard on May 5th between 4 o'clock and 6 o'clock. The sun had started to set; it had to be late. Between 4:00 and 6:00 I did strike Joey with my motorbike. The motorbike was in my father's name. I was about 10 or 12 feet from the roadway when I struck Joey. . . .
>
> \* \* \*
>
> I was riding down through the yard in front of their yard. . . . Al Cayton was in front of me, and he had his little brother which was about 2 or 3 years old riding with him, in front of him, and he went on down the road. . . . I was riding about 15 miles an hour with a tinted face shield over my helmet.
>
> \* \* \*
>
> As soon as I saw them I hit the brakes and the horn. As to whether they came some 10 feet into the yard, no, they were running. As soon as I saw them I hit the brakes and they kept on running and I hit the horn and then the little boy ran right out in front of me and the girl stayed there. Yes, I said the brakes had already locked. Well, you slide. You will slide. I slid for about 10 or 12 feet. That was the grass. I was going down hill and if you lock the back brake on the grass you will slide. You might as well not hit the brakes just about. . . .

The injured child, who was three years old, was taken to the hospital where he remained in intensive care for a week. After surgery, he was removed to a private room where he remained for an undisclosed period of time.

At the close of plaintiff's evidence defendant moved for a directed verdict on grounds that (1) plaintiff had failed to prove actionable negligence, and (2) the "family purpose doctrine" did not apply so as to impute the negligence of John David Williams to his father, John Waldrop Williams. The mo-

tion was denied. Defendant offered no evidence and issues were submitted to and answered by the jury as follows:

ISSUES

1. Was David Williams driving the Honda SL100 for a family purpose of defendant John Waldrop Williams at the time of the collision?

ANSWER: Yes.

2. Was the plaintiff Joseph D. Williams II injured by the negligence of David Williams?

ANSWER: Yes.

3. What amount, if any, is the plaintiff Joseph D. Williams, Gdn. entitled to recover for personal injuries to Joseph D. Williams II, a minor?

ANSWER: 6786.00 (67.86 (life expectancy for 3 year old) X $100) to be paid in a lump sum at the present time.

4. What amount, if any, is plaintiff Joseph D. Williams entitled to recover for medical expenses incurred on behalf of his child, Joseph D. Williams II?

ANSWER: Yes $1,721.60.

Defendant appealed from judgment entered on the verdict.

*James, Hite, Cavendish & Blount, by Robert D. Rouse III, for plaintiff.*

*Gaylord, Singleton & McNally, by Louis W. Gaylord, Jr., and Phillip R. Dixon, for defendant.*

BRANCH, Justice.

The initial question presented in this case is whether the family purpose doctrine is applicable to negligence actions arising from the operation of a motorcycle off the public highways.

[1] The family purpose doctrine imposes liability upon the owner or person with ultimate control of a motor vehicle for its negligent operation by another when it is shown (1) that the operator was a member of his family or household and was living in his home, (2) that the vehicle was owned, provided

and maintained for the general use, pleasure and convenience of his family, and (3) that the vehicle was being so used by a member of his family at the time of the accident with his express or implied consent. *Lynn v. Clark,* 252 N.C. 289, 113 S.E. 2d 427; *Watts v. Lefler,* 190 N.C. 722, 130 S.E. 630. In this State the doctrine is a rule of law adopted by the Court as an extension of the principle of *respondeat superior. Grindstaff v. Watts,* 254 N.C. 568, 119 S.E. 2d 784. Although the family purpose doctrine has been criticized as unduly straining this principle of law, our Court has long considered any shortcomings in legal reasoning to be outweighed by the doctrine's value as an instrument of social policy. In *Grindstaff v. Watts, supra,* Justice Moore, speaking for the Court, explored the genesis of the doctrine:

> The family purpose doctrine "came into being as an instrument of social policy to afford greater protection for the rapidly growing number of motorists in the United States." 38 N.C. Law Review 252-3. Perhaps nothing has had so great an impact on the business and social life of this country during the past half century as the advent and ever increasing use of automobiles and trucks. It was probably inevitable that there should be an alarming number of collisions and accidents resulting in injuries, suffering and economic loss. This possibly justified the search of the courts for some device to impose a greater degree of financial responsibility. . . .

Defendant contends that because David Williams was operating a *motorcycle* in his neighbor's front yard, and *not on the public highway,* the family purpose doctrine should not apply. It is argued, and the Court of Appeals agreed, that the family purpose doctrine is "an anomoly in the law" which should be extended only by legislative action. In support of the argument that the doctrine should not be extended to apply to the operation of motorcycles off the public highways, defendant strongly relies upon the following statement from *Grindstaff v. Watts, supra:* "In the absence of legislative action, this Court is not disposed to extend the family purpose doctrine in North Carolina to instrumentalities other than *motor vehicles operating on public highways."* [Emphasis added.]

It was held in *Grindstaff* that the family purpose doctrine did not apply to negligence cases arising out of the operation

---

Williams v. Trust Co.

---

of motorboats on the waters of this State. This holding, however, was shortly thereafter overruled by the enactment of G.S. 75A-10.1 which specifically makes the doctrine applicable to such cases. Further, we interpret the crucial language in *Grindstaff* to be *descriptive* of the *nature* of the vehicle to which the family purpose doctrine is applicable, and not *restrictive* of the *use* in which the vehicle must be engaged at the time of the accident. In other words, *Grindstaff* only limited the application of the family purpose doctrine to motor vehicles of a type which are commonly used upon the public highways, as opposed to those of a wholly different design, in that case motorboats. With this distinction in mind, we do not think the application of the family purpose doctrine to the facts of instant case runs counter to the rationale of the *Grindstaff* decision.

[2] Unquestionably a motorcycle is a motor vehicle for purposes of the family purpose doctrine. It is a self-propelled vehicle designed and intended for operation upon the public highways. G.S. 20-4.01 (27) includes motorcycles within the definition of "passenger vehicles" so as to make them subject to the motor vehicle registration and driver's licensing laws of G.S. 20-50 and G.S. 20-7. In *Meinhardt v. Vaughn,* 159 Tenn. 272, 17 S.W. 2d 5, the Tennessee Supreme Court indicated that the reasoning which forms the basis for the application of the family purpose doctrine to automobile accidents applies with equal force to accidents involving motorcycles.

We do not believe that the fact that an injury occurs as a result of the operation of a motor vehicle on private property defeats the application of the family purpose doctrine. In many instances, as here, the youth of the operator *requires* that the operation of the motor vehicle be restricted to private property. The legislature has wisely determined that persons under 16 years of age lack the discretion and maturity to operate motor vehicles safely upon the public highways. This policy determination should heighten a parent's sense of responsibility and increase his duty of oversight when he provides his fourteen-year-old son with a potentially dangerous motor vehicle capable of attaining speeds of 60 miles per hour, knowing that its use will necessarily be limited to private property. Indeed, it is such use which presents the greatest risk of injury to those least capable of protecting themselves. Parents constantly implore their children to play in their yards and thereby avoid the dangers of motor vehicular traffic. Even those of sufficient

maturity to better care for their own safety would be justified in being less attentive to the dangers of such traffic when safely situated on their own property. It would surely be "an anomoly in the law" to hold a parent liable for his child's negligent operation of a motor vehicle in an area designated for its proper use, but to insulate the parent from liability when the vehicle is used in an area presenting a greater potential for injury. Children belong in yards; motorcycles do not.

[3] We hold that the family purpose doctrine is applicable to accidents involving the operation of a motorcycle upon private property.

The family purpose doctrine does not relieve plaintiff of his burden to show actionable negligence in order to justify a jury verdict in his favor. We, therefore, must consider defendant's contention that the trial judge erred when he failed to grant its motion for a directed verdict on the ground that there was not sufficient evidence to carry the case to the jury.

Actionable negligence is the failure to exercise that degree of care which a reasonable and prudent man would exercise under similar conditions and which proximately causes injury or damage to another. *Toone v. Adams,* 262 N.C. 403, 137 S.E. 2d 132; *Jackson v. Stancil* and *Smith v. Stancil,* 253 N.C. 291, 116 S.E. 2d 817; *Griffin v. Blankenship,* 248 N.C. 81, 102 S.E. 2d 451. Defendant's motion for a directed verdict raised the question of whether plaintiff's evidence, when considered in the light most favorable to plaintiff, would justify a verdict for the plaintiff. *Winters v. Burch,* 284 N.C. 205, 200 S.E. 2d 55; *Rayfield v. Clark,* 283 N.C. 362, 196 S.E. 2d 197.

[4] The presence of small children on or near a street is a danger signal to a motorist who must bear in mind that children have less capacity to avoid danger than adults and he is, therefore, required to use the care a reasonable man would exercise under such circumstances. *Rodgers v. Carter,* 266 N.C. 564, 146 S.E. 2d 806. This duty of increased vigilance is also required when a vehicle is being operated on private property. *McNeill v. Bullock,* 249 N.C. 416, 106 S.E. 2d 509.

The facts in *Sugg v. Baker,* 261 N.C. 579, 135 S.E. 2d 565, are strikingly similar to those presented in instant case. The evidence in *Sugg v. Baker, supra,* tended to show that defendant was traveling 15 to 20 miles per hour along a street

when his attention became focused upon a man and two youths with a homemade go-cart in a driveway to his left. He did not see plaintiff's intestate, a child less than three years old, who had wandered into the street from behind a hedge along a driveway on defendant's right. There the Court held that this evidence was sufficient to permit an inference that had defendant kept a proper lookout he might have seen the child in time to have stopped or avoided the injury.

[5] Here, when considered in the light most favorable to the plaintiff, the evidence tends to show that David Williams was operating the motorcycle belonging to his father and furnished to him for his use and pleasure across the front yard of a home in which he knew little children lived and played. He had been told not to operate the vehicle on these premises. He was operating his motorcycle at a speed of about 15 miles an hour along a path which had been created by his motorcycle and the motorcycle of one of his friends. Although his vision was momentarily obstructed by a bush, he failed to decrease his speed before he saw the child and was forced to suddenly apply his brakes. By his own admission, his brakes were of little value under these conditions.

This evidence was sufficient to support a reasonable inference that David Williams was operating the motorcycle at a greater rate of speed than was reasonable or prudent under the circumstances. Likewise the evidence was sufficient to support a reasonable inference that David Williams was operating the motorcycle in a negligent manner in that he failed to keep a proper lookout.

We hold that there was ample evidence to repel defendant's motion for a directed verdict.

The decision of the Court of Appeals reversing the judgment of the trial court is

Reversed.