Matthew STRUM, Plaintiff–Appellant,

v.

EXXON COMPANY, USA, A DIVISION OF EXXON CORPORATION; Exxon Corporation, Defendants–Appellees.

No. 93–1358.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1993.

Decided Jan. 31, 1994.

---

**ARGUED:** Lucius M. Cheshire, Sr., Cheshire, Parker & Butler, Hillsborough, NC, for Appellant. Richard C. Gaskins, Jr., Petree, Stockton, Charlotte, NC, for Appellee. **ON BRIEF:** Richard E. Morton, Petree, Stockton, Charlotte, NC, for Appellee.

Before WIDENER, WILKINSON, and WILLIAMS, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

This case requires us to address various rationales for using tort remedies to compensate contract breaches. Because the plaintiff pled fanciful tort theories where redress, if any, lay in the law of contract, we affirm the district court's grant of summary judgment in favor of the defendant.

### I.

Plaintiff Matthew Strum operated an Exxon service station in Hillsborough, North Carolina. After leasing the station for many years, Strum purchased it in 1975 and continued to operate it as an Exxon station pursuant to a series of gasoline distribution agreements with the company. In April 1988, Exxon informed Strum that it would not renew his distribution agreement because his station was unprofitable, and Strum ceased selling Exxon gasoline on September 1, 1988. He did, however, continue to operate the station as an automobile repair business.

Once Exxon had terminated its distribution agreement with Strum, it began negotiations with him regarding recovery of its underground storage tanks which were used to hold the station's gasoline. The two parties reached an agreement governing removal of the tanks in March 1989. The agreement provided that Exxon would remove the tanks from Strum's property within three days of starting work. "[u]nless any environmental problems develop or unanticipated events arise...."

Removal of the tanks began on May 15, 1989. For reasons which are in dispute, the removal took much longer than three days. The record does make clear that Exxon discovered at least some soil contamination while removing the tanks and was still involved in various remedial actions on Strum's property as late as December 1989. Exxon's activities during this period included the taking of multiple soil samples and the installation of monitoring wells to evaluate any groundwater contamination. Exxon also negotiated a second agreement with Strum in November 1989, which laid out procedures for solving the soil problems and for the restoration of Strum's property.

Strum was ultimately unsatisfied with Exxon's activities at the station and brought suit against the company in North Carolina state court in March 1992. Strum alleged causes of action for fraudulent inducement, negligence, and gross negligence.[1] Strum claimed that during the period when Exxon was removing the tanks, the excavations impeded access to the service and repair bays of his station, making it impossible for him to operate a profitable auto service business. Exxon removed the case to federal district court on diversity grounds and moved for summary judgment. The district court granted Exxon's motion on each of the three counts. It found that Strum could not establish the essential elements of fraud, and could not provide sufficient evidence to ground a cause of action for either negligence or gross negligence. Strum now appeals, contending that each cause of action should have proceeded to trial.

### II.

■ At the outset, it is necessary to place the claims underlying this appeal in the appropriate context. Simply put, this case involves an attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim. Whatever injury Strum may have sustained here resulted from the possible breach of a commercial relationship memorialized in contract. However, because plaintiff suffered little, if any, actual damages, he attempted to shoehorn this case into a tort framework. Each of the counts as now pleaded by Strum holds the prospect of a hefty punitive damages award. This attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice.

---

1. On appeal, Strum contends that the second cause of action was not one for negligence but actually involved a claim of "intentional damage to real property." The district court, however, referred to this claim as one for negligence, and we adopt that terminology here. The question of what Strum's second claim actually does involve will be addressed below.

Contract law is simply more restrictive than tort law in awarding damages. Indeed, the punitive damages recovery Strum would seek in tort is not generally permitted in the context of a contract breach. *See* 5 Arthur L. Corbin, *Corbin on Contracts* § 1077, at 438 (1964) ("It can be laid down as a general rule that punitive damages are not recoverable for breach of contract. . . ."); 1 Linda L. Schlueter & Kenneth R. Redden, *Punitive Damages* § 7.2, at 275 (2d ed. 1989) ("[P]unitive damages cannot be recovered for a mere breach of contract . . . no matter how reprehensible the breach was by the defendant.") (footnotes omitted).

This difference in awarding damages results from the fact that tort and contract law serve different goals. Tort law emerges from duties individuals owe generally to other members of society; it is faultbased and seeks both to compensate the victim and punish the wrongdoer. Accordingly, punitive awards may be appropriate where the requisite standards of culpability under state law have been met. Contract law, by contrast, arises out of the attempt by private individuals to order relationships among themselves. When such relationships collapse, the law has long recognized that compensating the individual only for actual loss will suffice. *See Restatement (Second) of Contracts* § 355 cmt. a, at 154 (1981) (stating that "[t]he purpose[ ] of awarding contract damages is to *compensate* the injured party," not to punish the party in breach) (emphasis added).

The distinction between tort and contract possesses more than mere theoretical significance. Parties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so. Punitive damages, because they depend heavily on an individual jury's perception of the degree of fault involved, are necessarily uncertain. Their availability would turn every potential contractual relationship into a riskier proposition. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 671–72 (4th Cir.1986). Indeed, Corbin cautioned against punitive damages in contract for just this reason, stating that, "[i]n the innumerable cases arising from the breach of an ordinary commercial contract, it has seemed wise to adhere to the general rule excluding the punitive element and to avoid the frequently futile attempt to determine the degree of moral obliquity." Corbin, *supra,* § 1077, at 440.

The parties in this case deserved the chance to lay out their obligations and to limit their liabilities through the medium of contract. The presence of punitive damages claims deprives defendant of the very benefit it bargained for. Exxon did not bargain for the risk of an openended jury award, the most palpable risk that punitive damages create. Instead, the company bargained for liability limited to damages that might arise from deficient performance under the agreement. The contractual relationship does make Exxon liable for consequential damages to Strum's business arising out of any unreasonable delay by Exxon during the tank removal process. It does not make Exxon liable, however, for an award unrelated to the actual damages Strum sustained.

Here the actual damages were not significant. Strum's labor and merchandise sales for each month in 1989 when Exxon was engaged in remedial actions either approximated or, as was true in most months, far surpassed the sales for the corresponding month in 1988. The fact that Strum's own financial records indicate that his auto repair business did not suffer appreciably from Exxon's activities does not entitle him to recast his contract claim in tort. A paucity of actual damages affords no basis for a party to seek a punitive award.

### III.

We now turn to Strum's particular claims. Only where a breach of contract also constitutes an "independent tort" may tort actions be pursued. *See Restatement (Second) of Contracts* § 355 (1981). The independent tort exception is the only exception the *Restatement* recognizes to the general rule that punitive damages are not recoverable for breach of contract. North Carolina law also recognizes the availability of the independent tort exception in breach of contract cases. *See Newton v. Standard Fire*

*Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297, 301 (1976); *Asheville Contracting Co. v. City of Wilson,* 62 N.C.App. 329, 303 S.E.2d 365, 373 (1983). However, that exception has been carefully circumscribed by state law. The independent tort alleged must be "identifiable," *Newton,* 229 S.E.2d at 301, and the tortious conduct must have an aggravating element such as malice or recklessness before any punitive damages may be recovered, *id.; see also Marcoin, Inc. v. McDaniel,* 70 N.C.App. 498, 320 S.E.2d 892, 898–99 (1984). None of Strum's counts allege viable independent tort claims.

### A.

While Strum's first claim, which is for fraudulent inducement, could constitute an independent tort, that claim lacks both factual and legal support. Strum contends that Exxon fraudulently induced him into entering the March 1989 agreement governing removal of the tanks. Specifically, Strum argues that Exxon knew it could not remove the tanks within three days and that it made this promise only to induce Strum's acquiescence in the March agreement. Strum maintains that because issues of motive and intent are difficult to resolve on summary judgment, he deserves an opportunity to have his fraudulent inducement claim presented to a jury.

■ We disagree. Strum ignores both the language of the March agreement with Exxon and the elements necessary to make out a fraud claim. The March agreement plainly conditions the three day removal period on the absence of environmental problems, a condition which failed to materialize. Furthermore, while Exxon may have misjudged the time it would take to remove the tanks, misjudgment alone is not fraudulent inducement. At most, Strum may have been able to prove that Exxon did not carry out its promise, not that Exxon never had any intention of doing so. The mere failure to carry out a promise in contract, however, does not support a tort action for fraud. *See Hoyle v. Bagby,* 253 N.C. 778, 117 S.E.2d 760, 762 (1961); *In re Baby Boy Shamp,* 82 N.C.App. 606, 347 S.E.2d 848, 853 (1986).

Additionally, Strum cannot simply cry fraud and thereby escape summary judgment. The Federal Rules of Civil Procedure require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.P. (9)(b). North Carolina law likewise states that "[m]ere generalities and conclusory allegations of fraud will not suffice" to sustain a fraud claim. *Moore v. Wachovia Bank & Trust Co.,* 30 N.C.App. 390, 226 S.E.2d 833, 835 (1976); *see also* N.C.GEN.STAT. § 1A–1, Rule 9(b) (1990) ("In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."); *In re Estate of Loftin,* 285 N.C. 717, 208 S.E.2d 670, 675 (1974) (applying North Carolina Rule 9(b)). Because Strum has done nothing more than assert that Exxon never intended to honor its obligations under the March agreement, the district court's dismissal of the first cause of action was entirely appropriate.

### B.

■ Strum's second cause of action is exactly the sort of tort claim that does not belong in a breach of contract action. It does not qualify as an "independent tort" because, among other things, it is not identifiable. Furthermore, it is far from clear that the claim Strum now alleges exists at all. The district court treated the second cause of action as a negligence claim; Strum now characterizes it as an action for "intentional damage to real property." He therefore argues that the district court's dismissal of this claim for failure to provide evidence of negligence was erroneous.

■ This argument has no basis. First, any fault in the misinterpretation of Strum's second cause of action must fall upon Strum. His complaint does not contain the phrase "intentional damage to real property," and the district court quite reasonably read the claim as asserting negligence on Exxon's part. Regardless, we find no evidence that the cause of action Strum now attempts to assert exists under North Carolina law. Strum points us to no cases recognizing such an action, and our review of North Carolina law revealed only a few inapposite instances where such a cause of action was even suggested. For example, several insurance

cases discuss situations where an insured has intentionally damaged real property. *See, e.g., North Carolina Farm Bureau Mut. Ins. Co. v. Balfour*, 62 N.C.App. 580, 302 S.E.2d 922, 924 (1983); *Nationwide Mut. Ins. Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341, 343 (1977). At least one other decision discusses state provisions allowing counties to insure against intentional damage to property caused by their employees. *See Dickens v. Thorne*, 110 N.C.App. 39, 429 S.E.2d 176, 178–80 (1993). These cases provide a slender reed for a federal appeals court—charged simply with applying the existing law of the state—to recognize a potentially novel cause of action. Harm to property is, of course, a basic element of damages, which Strum has never properly sought. It does not, however, qualify as an independent tort. Given that this allegation can go forward only if it meets the independent tort exception's identifiability requirement, we have little trouble upholding the district court's grant of summary judgment against Strum on his second claim. *Cf. Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743, 745 (1986) (holding that where a cause of action has no law to support it, dismissal of the claim is appropriate).[2]

### C.

Strum's final cause of action, which alleges gross negligence, also cannot be encompassed within the independent tort exception. Strum argues that Exxon did not follow various North Carolina Department of Environment, Health, and Natural Resources ("DEHNR") reporting requirements for underground storage tanks. For example, Strum claims that Exxon violated DEHNR regulations requiring that the discovery of a gasoline release from an underground storage tank be reported within twenty days. Strum asserts that Exxon's failure to follow these requirements creates a material issue of fact as to whether Exxon acted in a grossly negligent fashion.

■ We are not persuaded. For purposes of summary judgment, we accept Strum's contention that Exxon defaulted on its obligations to notify DEHNR of the discovery of a gasoline release at the site. However, any sanction for noncompliance with DEHNR regulations most appropriately lies with that agency, and it has taken no action against Exxon. *Cf. Bashford v. North Carolina Licensing Bd. for Gen. Contractors*, 107 N.C.App. 462, 420 S.E.2d 466, 469 (1992) (holding the violation of a regulation, without more, insufficient to make out a claim of gross negligence). Moreover, the relationship between the reporting requirements and Exxon's contractual obligations to Strum is tenuous at best. The violations of DEHNR regulations lack connection to the damages Strum points to, namely the inability to use his service station. Indeed, most of Exxon's delays in following DEHNR reporting requirements occurred *after* the excavations at Strum's station had been filled in.

Additionally, Strum presented no evidence that Exxon's removal procedures were unreasonable. As the district court noted, Strum has provided no evidence of normal industry standards or any expert testimony relevant to Exxon's actual clean-up efforts. Indeed, one of Strum's own witnesses stated that remediation of soil contamination could take over six months. Strum's meager evidentiary showing here would not even be sufficient to sustain a claim for negligence, since such a claim requires a demonstration that defendant failed to exercise due care in performing duties owed to the plaintiff. *See Bolkhir v. North Carolina State Univ.*, 321 N.C. 706, 365 S.E.2d 898, 900 (1988); *Williams v. Wachovia Bank & Trust Co.*, 292 N.C. 416, 233 S.E.2d 589, 593 (1977). To sustain the gross negligence claim, Strum would have been required to demonstrate that Exxon's conduct in removing the tanks had been wanton or reckless as well. *See Bullins v. Schmidt*, 322 N.C. 580, 369 S.E.2d 601, 603 (1988).

There is, however, a more basic deficiency here. Strum's claim for gross negligence really arises out of Exxon's performance on the contract, not out of the type of distinct

---

**2.** Even if such a claim did exist, we can see no factual support for its application here. The crux of Strum's claim seems to be that Exxon broke up the concrete over the ground where the gasoline tanks were buried. However, Strum must have known that the only way to reach the tanks was to break up that concrete. Claims alleging that actions specifically contemplated in a written contract constitute a tort simply have no basis.

circumstances necessary to allege an independent tort. We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations. Finding that the evidence presents no triable issue as to a contractual breach or as to damages sustained therefrom, we affirm the grant of summary judgment for defendant.

*AFFIRMED.*