**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2321**

TRIAD PACKAGING, INCORPORATED; LOUIS WETMORE,

Plaintiffs – Appellants,

v.

SUPPLYONE, INCORPORATED,

Defendant – Appellee,

and

DAVIDSON, HOLLAND & WHITESELL & CO., PLLC,

Respondent,

v.

DURHAM BOX COMPANY, INCORPORATED,

Third Party Defendant – Appellant.

**No. 13-2362**

TRIAD PACKAGING, INCORPORATED; LOUIS WETMORE,

Plaintiffs – Appellees,

v.

SUPPLYONE, INCORPORATED,

Defendant – Appellant,

v.

DURHAM BOX COMPANY, INCORPORATED,

Third Party Defendant – Appellee.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:10-cv-00005-RLV-DCK)

_____

Argued: October 30, 2014                    Decided: January 23, 2015

_____

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Duncan and Judge Keenan joined.

_____

**ARGUED:** Matthew Kyle Rogers, Hickory, North Carolina, for Appellants/Cross-Appellees. John Scott Kingston, THOMPSON COBURN LLP, St. Louis, Missouri, for Appellee/Cross-Appellant. **ON BRIEF:** Mark W. Kinghorn, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellee/Cross-Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

The case before us is facially complex but in reality involves a straightforward breach of contract action. In the district court, Louis Wetmore sought to recover damages from a bad deal, in which he sold the assets of his two companies, Triad Packaging, Inc., and Durham Box Company, Inc., to SupplyONE, Inc. SupplyONE, in turn, filed counterclaims to recover what Wetmore allegedly owed under their purchase agreement.

The district court granted summary judgment on the majority of Wetmore's claims against SupplyONE but allowed the parties' respective breach of contract claims to proceed to trial. The jury returned verdicts against both parties, apportioning damages accordingly.

We affirm the district court's order of summary judgment, as well as the jury's verdict and the damages award to SupplyONE. However, we vacate the jury's award to Wetmore for "contractual damages," as we can discern no basis for that award.

I.

Wetmore is the owner and majority shareholder of Triad Packaging and Durham Box Company, two companies formerly engaged in manufacturing and supplying cardboard boxes used in

3

commercial packaging and shipping in North Carolina and South Carolina. In late 2007, Wetmore entered into discussions to sell the assets of his companies to SupplyONE, a national company also engaged in the corrugated box industry. These discussions were memorialized by a letter of intent, signed in April 2008, which contemplated closing in July of that year. The letter also proposed a purchase price of $3.5 million.

During the due diligence period, however, SupplyONE determined that the deal was not as advantageous as it had originally thought. It therefore obtained Wetmore's agreement to extend the deadline for closing and recommenced negotiations, resulting in an adjusted purchase price of just over $3 million. The deal finally closed in October 2008 with the signing of an Asset Purchase Agreement.

The agreement contained the following relevant provisions:

- Section 2.6 provided for a purchase price of $3,094,350.52, payable by (1) a promissory note in the amount of $100,000, due to mature in October 2013, (2) $175,000 in an escrow account to cover any post-closing price adjustments, and (3) cash payments.

- Section 2.7 provided three avenues for price adjustment on or after closing:

  1. If, after preparing a "Closing Date Balance Sheet," it was discovered that the assets delivered to SupplyONE fell below the minimum amount provided by the agreement ($727,000), Wetmore would be required to make up the difference. The agreement required SupplyONE to provide the balance sheet to Wetmore within 60 days of closing.

4

2. Any unsold or obsolete inventory and uncollected accounts receivable remaining 180 days after closing would be returned to Wetmore, who would reimburse SupplyONE for their value.

3. The value of inventory and accounts receivable attributable to one particular client ("AP Exhaust") would not be included in the assets transferred, and their value would be deducted from the purchase price.

- Section 2.8 provided for allocations of the purchase price among the purchased assets and required SupplyONE to prepare the appropriate IRS form within 90 days of closing.

- Section 6.10 required SupplyONE to use its best efforts to sell inventory and to collect accounts receivable it assumed as part of the sale.

- Section 6.11 required both parties to provide reasonable access to information for the purpose of concluding the transaction.

In addition, as part of the sale, Wetmore and SupplyONE entered into an employment agreement, under which Wetmore would remain with the company for several years in a sales capacity.

Following closing, the parties disputed the amounts by which the price should be adjusted under Section 2.7. Initially, SupplyONE failed to produce the balance sheet within the time-frame provided by the agreement. As a result, Wetmore disputed the extent of any asset deficiency and refused to reimburse SupplyONE for either the alleged deficiency or for the value of the unsold inventory and uncollected accounts receivable. Eventually, SupplyONE instituted claim proceedings

5

under the escrow agreement to recover the amounts it alleged it was owed.

In response, Wetmore filed suit in North Carolina state court, alleging four claims: (1) unjust enrichment, (2) breach of contract, (3) fraud, and (4) unfair and deceptive trade practices. SupplyONE removed the case to federal court and asserted counterclaims for breach of contract and breach of warranty. On multiple motions for summary judgment by both parties, the district court dismissed Wetmore's first, third, and fourth claims but allowed the parties' remaining claims to proceed to trial.[1]

After a seven-day trial, the jury returned verdicts for both Wetmore and SupplyONE. Specifically, the jury found that SupplyONE breached the agreement in four ways: (1) it did not produce the balance sheet within 60 days of closing, (2) it did not provide the allocation of purchase price IRS form within 90 days of closing, (3) it did not provide Wetmore post-closing access to information, and (4) it breached its implied covenant of good faith and fair dealing. However, the jury rejected Wetmore's claims that SupplyONE breached the purchase agreement by failing to correctly adjust the purchase price for unsold

---

[1] However, because SupplyONE voluntarily dismissed its breach of warranty claim during trial, only its breach of contract claim was submitted to the jury.

6

inventory, uncollected accounts receivable, and assets related to the AP Exhaust client. In addition, it rejected Wetmore's individual claim that SupplyONE breached their employment agreement. The jury awarded Wetmore $211,363 in "contractual damages," in addition to $123,571 from the escrow account.

The jury also found that Wetmore breached the agreement by failing to pay SupplyONE for the asset deficiency, the uncollected accounts receivable, and the unsold inventory. The jury awarded SupplyONE $332,605 in damages to satisfy the price adjustment provisions of the agreement.

The district court denied the parties' post-trial motions, affirmed the jury's verdicts, and entered judgment in the amounts awarded at trial.[2]

## II.

Wetmore asserts ten issues on appeal, the majority of which are either duplicative or underdeveloped. For example, Issues II, III, IV, and VII--all essentially challenging the district court's refusal to allow Wetmore to introduce at trial evidence and arguments relevant to his claims disposed of at summary

---

[2] In addition, the district court ordered SupplyONE to pay the outstanding promissory note owed to Wetmore, resulting in a total award to Wetmore of $464,911. The court also ordered that the remainder of the escrow account be distributed to SupplyONE, for a $384,034 total award to SupplyONE.

7

judgment--are supported by bare assertions of error in no more than two paragraphs of Wetmore's opening brief. Consequently, we do not consider them here. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (finding that a party abandons all claims that do not conform with the "specific dictates" of Federal Rule of Appellate Procedure 28, which, in pertinent part, mandates "citations to the authorities . . . on which the appellant relies"). Further, Wetmore's failure to make any argument in his opening brief with respect to Issue IX--that the district court erred in denying his motion for interest, costs, and attorneys fees--effectively waives that issue. See Hillman v. I.R.S., 263 F.3d 338, 343 n.6 (4th Cir. 2001) (citing Edwards, 178 F.3d at 241 n.6).

However, we identify two broad issues warranting discussion: (1) Wetmore's contention that the district court erroneously granted summary judgment to SupplyONE on Wetmore's unjust enrichment, fraud, and unfair and deceptive trade practices claims (presented in Wetmore's Issue I) and (2) Wetmore's argument that the court should not have denied his renewed motions for judgment as a matter of law (presented in Issues V, VI, VIII, and X). We also address SupplyONE's cross-appeal seeking reversal of the jury's "contractual damages" award to Wetmore.

8

Because this case comes to us through our diversity jurisdiction, we apply North Carolina law.[3] Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 782 (4th Cir. 2012).

A.

Wetmore contends that the district court improperly granted summary judgment to SupplyONE on Wetmore's claims for unjust enrichment, fraud, and unfair and deceptive trade practices. We review the district court's grant of summary judgment de novo. Long v. Dunlop Sports Grp. Ams., Inc., 506 F.3d 299, 301 (4th Cir. 2007). Despite vociferous arguments to the contrary, Wetmore cannot make out a prima facie case of unjust enrichment, nor can he point to evidence in the record amounting to fraud or unfair or deceptive trade practices in the formation or performance of the purchase agreement.

1.

The equitable claim of unjust enrichment provides relief where one party confers a benefit on the other party but the injured party cannot make out a claim for breach of contract. Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988). Such a claim

_____

[3] Although the purchase agreement provides that Delaware law governs any dispute, both parties and the district court have applied North Carolina law throughout the course of this proceeding. See Triad Packaging, Inc. v. SupplyONE, Inc., 925 F. Supp. 2d 774, 786 (W.D.N.C. 2013). Because the parties do not contest the application of North Carolina law, we do not address the issue further.

9

is often referred to as one in quasi-contract or a contract implied in law. Id. Critically, however, for a claim in quasi-contract to sound, no express contract must exist: "If there is a contract between the parties the contract governs the claim and the law will not imply a contract." Id.; see also Whitfield v. Gilchrist, 497 S.E.2d 412, 415 (N.C. 1998).

Wetmore contends that SupplyONE's actions inconsistent with the parties' letter of intent--failure to close by July 2008, and failure to pay the original purchase price of $3.5 million--resulted in SupplyONE's unjust enrichment. However, this claim fails because the Asset Purchase Agreement functioned as an express contract governing the parties' entire arrangement.

The following facts support this conclusion. First, the letter of intent expressly states that, with the exception of provisions regarding confidentiality, non-solicitation, and professional fees, the letter is non-binding. Second, the letter was followed by the purchase agreement, which includes an integration clause providing that the agreement "sets forth the entire understanding of the parties . . . and supersedes all prior agreements or understandings among the parties." J.A. 135. Finally, Wetmore himself alleged in the complaint that the purchase agreement "was a contract entered into by and between the Plaintiffs and Defendant SupplyONE." J.A. 9.

10

As both parties, at least in the initial pleadings, agreed on the existence of a contract--the Asset Purchase Agreement--that contract governs. We therefore conclude that the district court correctly granted summary judgment on Wetmore's claim of unjust enrichment.

2.

Wetmore's fraud claim is based on SupplyONE's (1) alleged misrepresentations in the letter of intent (the $3.5 million purchase price and the earlier closing date), (2) failure to immediately disclose its misgivings about the original terms of the deal, and (3) alleged misrepresentations regarding its performance of certain terms in the purchase agreement. We agree with the district court that Wetmore's fraud claim fails as a matter of law.

An action for fraud must be predicated on a misstatement regarding a "subsisting or ascertainable fact" as opposed to representations relating to future conduct. Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974). Indeed, we have instructed that "[t]he mere failure to carry out a promise in contract . . . does not support a tort action for fraud." Strum v. Exxon Co., 15 F.3d 327, 331 (4th Cir. 1994) (applying North Carolina law).

Here, SupplyONE's statements regarding the sale price and closing date in the letter of intent are classic projections,

11

exemplified by the letter's non-binding nature.  They cannot, therefore, form the basis of a fraud claim.  Further, Wetmore's claimed reliance on the letter's closing date--or on SupplyONE's alleged failure to disclose its eventual desire to renegotiate the deal--is expressly negated by the fact that he later signed an agreement to extend the closing deadline.  Finally, despite his contentions that SupplyONE never intended to follow through on its representations in the letter of intent, Wetmore has been unable to adduce any evidence to that effect.

In essence, Wetmore is trying to convert his breach of contract claim to a tort claim by arguing that SupplyONE did not follow through on material terms in the agreement.  Appellant's Br. at 38 (asserting that SupplyONE "committed fraud relating to general performance of the [purchase agreement]").  In Strum, where a plaintiff similarly tried to "shoehorn [his] case into a tort framework," we cautioned against this approach, concluding that an "attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent both with North Carolina law and sound commercial practice."  Strum, 15 F.3d at 329.  We likewise reject such an attempt here.

3.

Finally, Wetmore fails to substantiate his claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq.  This claim is based

12

on allegations similar to those Wetmore makes for his fraud claim: essentially, that SupplyONE's misrepresentations and delay forced Wetmore to settle for a deal with terms less lucrative than those he had originally agreed to. We find that Wetmore cannot show SupplyONE violated the UDTPA.

The UDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). We have held that only practices involving "some type of egregious or aggravating circumstances" violate the UDTPA. S. Atl. Ltd. P'Ship of Tenn. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002) (alteration omitted) (quoting Dalton v. Camp, 548 S.E.2d 704, 711 (2011)). Moreover, we have emphasized that garden-variety breaches of contract "rarely" violate the statute. See id. at 536.

Here, Wetmore argues that SupplyONE's delay in closing was the fountainhead of the wrong and amounted to an aggravating circumstance that violated the UDTPA. He cannot, however, show any actions by SupplyONE that constitute egregious circumstances beyond normal deliberations and negotiations (and the corresponding adjustments in terms) that accompany a transaction of this nature.

Wetmore also devotes significant time to the novel argument, first identified in his post-trial "Motion for Judgment Conforming with the Evidence," that SupplyONE's lawsuit

13

against Wetmore for indemnification--filed in the Western District of Pennsylvania and recently dismissed on grounds of res judicata--demonstrates "post-verdict" unfair and deceptive actions that should invalidate the court's earlier summary judgment motion. However, Wetmore provides no authority supporting this notion, and as such, we decline to consider it. See Edwards, 178 F.3d at 241 n.6.

We conclude that the district court correctly granted summary judgment on Wetmore's claims for unjust enrichment, fraud, and unfair and deceptive trade practices.

B.

Wetmore further contends that the district court erred in denying his motion for a directed verdict on SupplyONE's counterclaim for breach of contract. According to Wetmore, the verdict against him on the counterclaim was erroneous because SupplyONE's "prior uncured breach" discharged his obligation to pay amounts owed to SupplyONE under the agreement, and the jury erroneously concluded that SupplyONE did not breach the provision of the agreement requiring "best efforts" to collect accounts receivable and sell inventory.[4]

---

[4] Wetmore also asserts for the first time on appeal that the jury's verdict on the counterclaim was based on an incorrect construction of an "ambiguous" net asset threshold amount in the agreement. His failure to raise this point of error before the district court waives our review of the issue. See United (Continued)

14

Although Wetmore presents these issues in a pre-verdict posture, they arise from the district court's denial of Wetmore's post-verdict, renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). We review the denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-moving party. See Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). We may not disturb a verdict where sufficient evidence could support a reasonable jury's finding in favor of the non-movant. Dotson v. Pfizer, Inc., 558 F.3d 284, 292 (4th Cir. 2009). We conclude that the district court properly denied Wetmore's motion.

1.

Wetmore first urges that SupplyONE never cured its failures to provide a closing date balance sheet and to provide him post-closing access to information. According to Wetmore, this "prior uncured breach" discharged his obligation to pay SupplyONE the amounts he owed under the price adjustment provisions of the agreement. We think the evidence supports a conclusion that SupplyONE eventually remedied its failure, and therefore Wetmore was not relieved of his obligation.

States ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 405 (4th Cir. 2013).

15

The "general rule" of bilateral contracts is that if either party materially breaches a contract, the other party is not required to perform further. Williams v. Habul, 724 S.E.2d 104, 112 (N.C. Ct. App. 2012). In addition, "[i]t is a salutary rule of law that one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." Mullen v. Sawyer, 178 S.E.2d 425, 431 (N.C. 1971) (quoting Harwood v. Shoe, 53 S.E. 616, 616 (N.C. 1906)). However, such a failure will discharge the other party's performance only so long as the deficiency remains uncured. See, e.g., Restatement (Second) of Contracts § 242 cmt. a (1981) (a party's remaining duties are not discharged if the other party cures its breach in a timely manner).

At trial, there was no dispute that SupplyONE failed to provide a balance sheet within 60 days of closing, or that Wetmore refused to reimburse SupplyONE for any net asset deficiency. Moreover, the district court instructed the jury that SupplyONE's breach of its obligation to supply the balance sheet could operate to excuse Wetmore's failure to fulfill his obligations under the price adjustment provisions of the purchase agreement. Nevertheless, although the jury found SupplyONE breached this portion of the purchase agreement by not providing the balance sheet "within 60 days of closing," it also

16

found Wetmore breached its subsequent obligation to reimburse SupplyONE under the price adjustment provisions of the agreement. J.A. 2764-770. Wetmore argues that SupplyONE's complete failure to provide him a balance sheet prevented him from performing, and therefore the jury's finding that he breached the section of the agreement was unreasonable. We disagree.

First, the record shows that SupplyONE engaged in preliminary and final calculations in an effort to create a closing date balance sheet. Specifically, internal emails in January 2009 show spreadsheets calculating the assets and liabilities Wetmore transferred at closing, as well as the subsequent net asset shortfall. Moreover, correspondence between Wetmore and SupplyONE in May and June 2009--in which Wetmore disputed SupplyONE's claims of a net asset deficiency-- suggests that Wetmore received accounting information, at the very latest, during an April 2009 meeting between Wetmore and SupplyONE representatives.

Although Wetmore may not have received a document titled "Closing Date Balance Sheet," the record shows that Wetmore received post-closing balance sheet information, which allowed him to commence discussions on the proper valuation of the net assets transferred. Consequently, the jury's verdict that

17

Wetmore breached his obligation by refusing to pay any net asset deficiency is supported by substantial evidence.

2.

Wetmore further argues that the district court erred in denying him judgment as a matter of law with respect to his claim that SupplyONE breached its obligation to use "best efforts" to collect accounts receivable and sell inventory. Critically, the purchase agreement does not define the term "best efforts." As a result, the court instructed the jury that it must "ultimately decide what the parties intended by including the best efforts standard" but that best efforts generally means "diligent attempts to carry out an obligation." J.A. 2335.

Here, the jury heard testimony from Forest Hammer, the president of SupplyONE's North Carolina subsidiary, that SupplyONE used its best efforts to resolve the old inventory and outstanding accounts receivable transferred as part of the sale. Specifically, Hammer testified that although much of the problematic inventory was obsolete, the company had sales representatives and managers reach out to customers about purchasing it. In addition, employees in the accounting department "worked . . . diligently for days and weeks" to collect accounts receivable. J.A. 2160. Overall, Hammer testified that

18

> [e]verybody had looked into the receivables. Everybody had done a very thorough effort for collections. Up to this point everybody had tried to dispose of the inventory in every way which we knew how.

J.A. 2152. Indeed, Hammer noted that SupplyONE made an "all American" and "extraordinary effort" to recover these assets. J.A. 2159-60.

We disagree with Wetmore's contention that because SupplyONE did not use the same procedures Wetmore used to collect old accounts or to move unsold or obsolete inventory, SupplyONE did not use its best efforts. Hammer's testimony, in particular, demonstrates SupplyONE's diligence. Consequently, the jury was entitled to rely on this testimony to conclude that SupplyONE met its best efforts obligation.

## III.

Finally, SupplyONE argues that the record evidence does not support the jury's award of $211,363 in "contractual damages" to Wetmore. A jury's damage award should stand unless "no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir. 1994). However, a jury may not award damages where the evidence allows

19

no more than speculation as to the amount. Weyerhaeuser Co. v. Godwin Bldg. Supply Co., 234 S.E.2d 605, 607 (N.C. 1977).

The jury's award to Wetmore included two components. First, the jury awarded $123,571 from the escrow account. Second, the jury awarded $211,363 in unspecified "contractual damages."

Here, the only evidence regarding damages came from Wetmore, whose testimony focused on three specific requests. First, conceding that he owed SupplyONE a net asset deficiency of $51,429, Wetmore sought $123,571 of the funds held in the escrow account. Second, he sought $129,977 owed to him under the promissory note (including both principal and interest). Finally, he sought $480,000 in damages relating to SupplyONE's alleged breach of the employment agreement. These were the only damages requested by Wetmore's attorney in his closing argument.

This testimony clearly supports the jury's award of the escrow monies to Wetmore. However, we can find no evidence supporting the remaining $211,363 of the jury's award. Although the district court and Wetmore have identified a number of potential bases for the award, we find none of them persuasive.

Initially, we do not accept the district court's conclusion and Wetmore's contention that the $211,363 award was reasonable because SupplyONE's breaches "frustrated" Wetmore from "proving up actual damages" and prevented calculation of the amounts owed

20

under the purchase agreement "with mathematical certainty." Although it may be true that SupplyONE's breaches hindered calculation of the purchase price adjustments, Wetmore testified that he was owed an exact sum from the escrow account--$123,571--and the jury awarded that sum. Consequently, that portion of the award grappled with and resolved whatever uncertainty surrounded Wetmore's damages. The deficiency in the remaining $211,363 of the award lies not in its lack of <u>certainty</u> but in its lack of evidentiary <u>foundation</u>.

Further, we reject the district court's reasoning that the damages could be based on SupplyONE's breach of the implied covenant of good faith and fair dealing. No evidence adduced at trial showed concrete damages stemming from SupplyONE's breach of that covenant. <u>See</u> <u>Thrower v. Coble Dairy Prods. Coop., Inc.</u>, 105 S.E.2d 428, 431 (N.C. 1958) ("[W]here actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed." (internal quotation marks omitted)). In our view, the district court's conclusion that SupplyONE's bad-faith actions in refusing to use a third-party accountant, failing to mediate, or attempting to recover rent could support a damages award is based more on a punitive theory of tortious injury than actual contractual damages. <u>See, e.g.</u>, <u>Newton v. Standard Fire Ins.</u>

21

Co., 229 S.E.2d 297, 301 (N.C. 1976) (punitive damages not allowed for breach of contract).

Finally, we find meritless Wetmore's speculation that the jury intended to compensate him for breach of the employment agreement. The jury's verdict expressly rejected this claim. Thus, any contention that the jury's $211,363 award was premised on this non-existent breach is nonsensical.

Because nothing in the record supports the jury's award of an additional $211,363 in damages to Wetmore, we conclude that the award has no reasonable basis.

IV.

For these reasons, we affirm the district court's order of summary judgment and the majority of the jury's verdict, vacating only the award of "contractual damages," to Wetmore. We remand the case to the district court for entry of judgment accordingly.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED