**CAPITAL FACTORS, INC., Plaintiff,**

v.

**THE FRYDAY CLUB, INC., Turner Industries II, Ltd, Bobby H. Turner and O.T.T.O., Inc., Defendants.**

**No. 3:01–CV–422–MU.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 30, 2002.

Michael J. Allen, Kenneth R. Keller, Carruthers & Roth, P. A., Greensboro, NC, for plaintiff.

Jonathan E. Buchan, Mark R. McGrath, Helms, Mulliss & Wicker, PLLC, Charlotte, NC, for defendants.

## ORDER

MULLEN, Chief Judge.

THIS MATTER is before the Court on Plaintiff's Motion to Dismiss Counterclaims ("Motion"), filed March 29th, 2002, and the supportive memorandum; Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaims, filed April 15th, 2002; and Plaintiff's Reply in Support of Motion to Dismiss Counterclaims, filed April 26th, 2002.

The Answer, filed March 15th, 2002, included various counterclaims against Plaintiff Capital Factors, Inc. ("Capital"). Plaintiff's Reply, filed March 28th, 2002, included 12(b)(6) and 9(b) motions to dismiss the counterclaims. All the Defendants except The Fryday Club ("Fryday") filed a voluntary dismissal of their counterclaims on March 28th, 2002. The only matter remaining under the Motion to Dismiss Counterclaims, consequently, is Plaintiff Fryday's motion to dismiss the second, third, fourth, and fifth counterclaims.

Fryday alleges that pursuant to the terms of the Fryday Club Agreement, Capital was required to document all transactions involving Fryday in an account dedicated exclusively to Fryday. Despite this requirement, Capital allegedly willfully, and with intention to deceive, transferred debts and transactions attributable to OTTO to the Fryday account. Capital allegedly also has withdrawn funds from Fryday's account without notice or justification, has not credited Fryday accounts for payments made by Fryday or its customers, has not provided defendants with account statements or other documentation regarding account activity, and has otherwise acted in a fraudulent manner.

Based on this set of facts for all claims relevant to this matter, Fryday alleges fraud (Second Claim for Relief), Negligent Misrepresentation (Third Claim for Relief), Unfair and Deceptive Trade Practices under Chapter 75–1.1, *et seq.* of the North Carolina General Statutes (Fourth Claim for Relief), and looks for punitive damages under North Carolina General Statute ID, *et seq.* (Fifth Claim for Relief).[1] Capital urges that the counterclaims should be dismissed because the facts supporting the counterclaims sustain no more than an alleged breach by Capital of its obligations under the Fryday Club Agreement, because all the wrongful conducted alleged arises out of the *contractual* relationship between Fryday and Capital.

This argument—essentially that other law, such as tort, need not and should not be invoked when the law of contracts governs—is largely supported in Capital's briefs by *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 345–347 (4th Cir.1998). There, Meineke franchisees sued Meineke under a breach of contract theory, but also under tort and North Carolina's unfair trade practices statute. The Fourth Circuit chastised the district court for ignoring "North Carolina law limiting the circumstances under which an ordinary contract dispute can be transformed into a tort action." *Id.* at 345. Policy dictates that "[p]unitive damages are generally not recoverable for breach of contract, and for good reason." *Id.* at 346. This good reason was supported with language from a prior seminal case on the issue of this policy. The earlier court wrote:

> The distinction between tort and contract possesses more than mere theoretical significance. Parties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so. Punitive damages, because they depend heavily on an individual jury's perception of the degree of fault involved, are necessarily uncertain. Their availability would turn every potential contractual relationship into a riskier proposition. *Strum v. Exxon Co.,* 15 F.3d 327, 329 (4th Cir.1994).

Yet despite this policy, it is also clear that tort damages *are* sometimes permissible in

---

1. The Court applies North Carolina law because Fryday alleges claims under the North Carolina statute (indicating that it embraces North Carolina law), and does not argue (even in the Reply) that the law of Florida applies.

the context of facts giving rise primarily to contract suits.

The key in the instant matter is determining what facts in contract-centered litigation will sustain a departure from policy and carry tort-like claims. The courts limit such situations to those "claims which are identifiable and distinct from the primary breach of contract claim, as North Carolina law requires." 155 F.3d at 346 (citation omitted). Of course, " 'the mere failure to carry out a promise in a contract . . . does not support a tort action for fraud.' " *Id.* (quoting 15 F.3d at 331)(other citations omitted). "Something more" is necessary: "distinct circumstances." *Id.* at 346–47.

■ In both *Broussard* and *Strum,* this notion of independent tort, or distinct circumstances was crucial. Those courts took an approach that determined that there existed a "contractual center" of the dispute—which is the case here—and then required some sort of independent, separate reason for tort-based suits. In the context of a UTPA claim, *Broussard* also looked at "substantial aggravating circumstances." *Id.* at 347 (citation omitted). This Court adopts an approach that asks whether the claims at issue could really be decided under a contract theory, only allowing tort causes of action if contract theory is insufficient to cover the facts. As *Strum* captured this standard: "We think it unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." 15 F.3d at 333.

In the instant matter, therefore, there must be an independent, identifiable tort and the alleged tortious conduct "must have an aggravating element such as malice or recklessness before any punitive damages may be recovered." *Id.* at 331.

The need for a court to see some facts in the pleadings that take the facts outside of the contract core is partially, perhaps, one reason for Federal Rule of Civil Procedure 9(b)'s requirement that averments of fraud be stated with particularity.

■ The counterclaims in the instant matter differ from those in *Broussard* and *Strum* because they allege problems that could not be dealt with solely through contract law. The allegations are not, as Capital claims, merely "assertions that under the Fryday Club Agreement, Capital failed to meet its alleged obligations properly to account for, apply and handle certain transactions which occurred pursuant to the Fryday Club Agreement." (Pl. Rep. Supp. Mot. Dis. at 5.) Instead, Fryday quite clearly alleges that Capital deliberately misappropriated funds, failed to credit accounts, and failed to provide information—acts that obviously do not fall within the scope of the Agreement, or the realm of contract law, and that because of the alleged malice or recklessness allow the litigants to foray into tort theory. These actions are comprised of substantially separate, distinct, and therefore identifiable independent facts that differ from the facts that the contract dispute is founded upon. The Court is reluctant to depart from the sound policy that the main point of a contract is to allow parties to agree on and limit terms and such contingencies as damages. But the alleged conduct here is behavior outside the scope of the contract, and it is equally sound policy to assure that parties do not sacrifice other extra-contractual rights just because they have a contract. The Court therefore finds that the counterclaims at issue make allegations that, if supported, could allow a departure to tort law.

The Court having concluded that the non-contract counterclaims are supported by largely independent facts, the only re-

maining question is whether Fryday complied with Federal Rule of Civil Procedure 9(b) which, as noted above, requires that averments of fraud be stated with particularity. 9(b) should be balanced with Rule 8(a), however, which militates in favor of short and plain statements of the claims. Clearly the reason for Rule 9(b) is that the drafters of the Federal Rules contemplated a *stricter* than usual pleading standard in alleging certain causes of action. The Fourth Circuit provides guidance:

> According to two noted scholars, the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed.1990))(also citing *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir.1990))(other citations omitted).

Although the specific facts in the present matter may not allow for intense detail as to time, place, contents, or other specifics, this measure of detail required should guide Fryday when it determines the kind of picture the Court and Plaintiff need. Obviously in counts two through five there is no mention of anything like time, place, or other specifics. Although Rule 8(a) requires that the facts alleged not be exhaustive, 9(b) requires that there be *some* concreteness to the allegations to put Capital on adequate notice. The Court finds that the detail required by 9(b) and cases like *Harrison* is simply not present, and therefore will send Fryday back to the drawing board out of fairness concerns for both parties. Fryday has alleged enough to show claims distinct from the contract claim to suggest that a departure to tort could occur. But Fryday has not been sufficiently specific, which is unfair to Capital.

IT IS THEREFORE ORDERED that the Motion is hereby GRANTED. IT IS FURTHER ORDERED that Fryday shall have **twenty days** from the date of entry of this Order during which it may submit versions of counts two through five amended to comply with the Order and Rule 9(b). Capital thereafter will have the time prescribed by the Local Rules to respond.