Perkins v. HealthMarkets, Inc., 2007 NCBC 25

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 06 CVS 21053 |

JAMES N. PERKINS, JR., and JIM
PERKINS & ASSOCIATES, INC.,

     Plaintiffs,

     v.

HEALTHMARKETS, INC., THE MEGA
LIFE & HEALTH INSURANCE
COMPANY, PERFORMANCE DRIVEN
AWARDS, INC., TROY A. McQUAGGE,
GARY D. BOWMAN, STEVEN J. HATEM,
BOB L. WINGATE, and JUDY
HOBERMAN,

     Defendants.

ORDER & OPINION

*James McElroy & Diehl, P.A. by William K. Diehl, Jr., and Jared E. Gardner for Plaintiffs James N. Perkins, Jr., and Jim Perkins & Associates, Inc.*

*Helms Mullis & Wicker, PLLC by Kathleen H. Dooley and Joshua D. Whitlock for Defendants HealthMarkets, Inc., The MEGA Life & Health Insurance Company, Troy A. McQuagge, Gary D. Bowman, and Judy Hoberman.*

Diaz, Judge.

I.

STATEMENT OF THE CASE

{1}    Plaintiffs in this case allege claims against the Defendants for (1) fraud, (2) breach of contract and breach of the implied duty of good faith and fair dealing, (3) unjust enrichment, (4) constructive trust, and (5) unfair and deceptive trade practices. (Am. Compl. ¶¶ 73–102.)

{2}     The claims arise out of what Plaintiffs allege was the forced removal of Plaintiff James N. Perkins, Jr. ("Perkins") as a division manager for Defendant, HealthMarkets, Inc. ("HealthMarkets").

{3}     Before the Court are the following Motions:  (1) Motion of Defendants HealthMarkets, The MEGA Life and Health Insurance Company ("MEGA"), Troy A. McQuagge ("McQuagge"), and Gary D. Bowman ("Bowman") to dismiss Count I of the Amended Complaint alleging fraud, pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure, and (2) Motion of Defendants Bowman and Judy Hoberman ("Hoberman") to dismiss Counts III and IV of the Amended Complaint alleging claims for unjust enrichment and constructive trust, respectively, pursuant to Rule 12(b)(6) (collectively the "Motions to Dismiss").

{4}     In resolving these Motions to Dismiss, the Court has considered the Amended Complaint, the parties' briefs, and the arguments of counsel.

## II.
## ISSUES

{5}     Defendants assert that Plaintiffs' allegations of fraud must be dismissed because the Amended Complaint (1) alleges nothing more than the breach of a promise regarding a future business opportunity, and (2) fails (as to Bowman) to allege fraud with particularity.  (Defs.' Mem. Supp. Mot. Dismiss Pls.' Fraud Cl. 5–6.)

{6}     Defendants Bowman and Hoberman also contend that Perkins has not alleged facts sufficient to sufficient his claim for unjust enrichment.

{7}     Bowman and Hoberman further contend that Perkins's separate request for a constructive trust fails as a matter of law because it relies for support on the insufficient claim for unjust enrichment.

{8}     Plaintiffs counter, that, accepting the allegations in the Amended Complaint as true, they have pled all of their claims in sufficient detail.

{9}     The issues are:

    (a) Have Plaintiffs satisfied the pleading requirements for fraud?

(b) Has Perkins pled a legally sufficient claim for unjust enrichment?

(c) Should Perkins's claim for constructive trust be dismissed?

## III.

### SUMMARY OF DECISION

{10} Plaintiffs have satisfied the pleading requirements for fraud.

{11} Perkins has pled a legally sufficient claim for unjust enrichment.

{12} Perkins's claim for constructive trust should not be dismissed.

## IV.

### PROCEDURAL HISTORY

{13} Perkins and Jim Perkins & Associates, Inc. ("Perkins, Inc.") filed their Complaint on 27 October 2006.

{14} The matter was transferred to the North Carolina Business Court as an exceptional case on 16 February 2007 and assigned to me.

{15} Plaintiffs filed an Amended Complaint on 28 February 2007.

{16} On 20 March 2007, HealthMarkets filed its Answer and Motion to Dismiss. Two days later, HealthMarkets filed an Amended Answer.

{17} On 22 March 2007, Bowman, MEGA, McQuagge, and Hoberman filed their Answers and Motions to Dismiss.

{18} On 16 April 2007, HealthMarkets, Bowman, MEGA, and McQuagge filed a brief in support of their Motions to Dismiss the Plaintiffs' fraud claim. Bowman and Hoberman filed a separate brief in support of their Motions to Dismiss the Plaintiffs' claims for unjust enrichment and constructive trust.

{19} Plaintiffs filed a brief opposing the Motions on 8 May 2007, and Defendants filed a reply on 18 May 2007.[1]

---

[1] Defendants attached two documents to their reply: First, what Defendants represented to be "the most complete copy of the Independent Agent Commission-Only Contract and Gold Addendum," (Schooler Aff. ¶ 3), referenced in Count V of the Plaintiffs' Amended Complaint alleging breach of contract, and second, an affidavit authenticating the contract. On 22 May 2007, Plaintiffs moved to strike these documents. The Court **GRANTED** the motion during the hearing, concluding that

{20}   On 13 June 2007, the Court heard oral arguments on the Motions.

V.

THE FACTS

{21}   The following facts are taken from the Plaintiffs' Amended Complaint, which the Court accepts as true for purposes of the Motions to Dismiss.

A.

THE PARTIES

{22}   Perkins resides in Marshville, Union County, North Carolina. (Am. Compl. ¶ 1.)

{23}   Perkins, Inc. is a North Carolina corporation with its principal office in Cornelius, Mecklenburg County, North Carolina. (Am. Compl. ¶ 2.)

{24}   HealthMarkets is a Delaware corporation with its principal office in North Richland Hills, Texas. (Am. Compl. ¶ 3.) Although not alleged explicitly in the Amended Complaint, HealthMarkets sells life and health insurance in North Carolina through a network of agents.

{25}   MEGA is an Oklahoma corporation with its principal office in North Richland Hills, Texas. MEGA is a subsidiary of HealthMarkets. (Am. Compl. ¶¶ 4, 6.)

{26}   McQuagge resides in Texas. (Am. Compl. ¶ 1.) McQuagge was at all relevant times an employee, officer and/or managing agent of HealthMarkets and MEGA.

{27}   Bowman resides in Hickory, Catawba County, North Carolina. (Am. Compl. ¶ 8.) Bowman was at all relevant times employed as a HealthMarkets Division Manager. (Am. Compl. ¶27.)

---

Defendants failed to attach these materials to their Motions to Dismiss as required by Business Court Rule 15.5, and also failed to prove they had submitted a complete copy of the contract.

{28}   Hoberman resides in Huntersville, Mecklenburg County, North Carolina. (Am. Compl. ¶ 11.) Hoberman was at all relevant times employed as a HealthMarkets Division Manager. (Am. Compl. ¶ 30.)

{29}   Defendant Steven J. Hatem ("Hatem") resides in New Hampshire. (Am. Compl. ¶ 9.) Hatem was at all relevant times employed as a HealthMarkets Division Manager. (Am. Compl. ¶ 40.)

{30}   Defendant Bob L. Wingate ("Wingate") resides in Mattthews, Union County, North Carolina. (Am. Compl. ¶ 10.) Wingate was at all relevant times employed as a HealthMarkets District Manager. (Am. Compl. ¶ 44, 54.)

B.

THE CLAIMS

{31}   Perkins began working as an insurance sales agent for HealthMarkets in 1990. He earned commissions by selling insurance policies, commonly referred to as "writing business." (Am. Compl. ¶ 16.)

{32}   Perkins was promoted to District Manager in 1991. Although he continued writing business, he also recruited and trained new sales agents for HealthMarkets and earned commissions on business written by those agents. (Am. Compl. ¶ 17.)

{33}   In 1996, HealthMarkets promoted Perkins to Division Manager. In that role, Perkins reported to Ronnie Simpson ("Simpson"), who was then a HealthMarkets Regional Director. (Am. Compl. ¶ 19.) Following his promotion to Division Manager, Perkins formed Perkins, Inc. to facilitate the operation of his division. (Am. Compl. ¶ 20.)

{34}   As Division Manager, Perkins earned commissions on business written by the managers and agents within the districts in his division. (Am. Compl. ¶ 21.) The number of districts under Perkins, and their size, quality, and productivity, determined his income and advancement. (Am. Compl. ¶ 21.)

{35}   McQuagge supervised and controlled all of HealthMarkets' regional directors, including Simpson. (Am. Compl. ¶¶ 7, 29.)

{36} On or about 29 October 2003, McQuagge asked Perkins and several other HealthMarkets Division Managers to meet with him in Charlotte, North Carolina. (Am. Compl. ¶ 29.)

{37} Only Bowman and McQuagge knew ahead of time why McQuagge had called the meeting and what was to transpire. (Am. Compl. ¶ 30.)

{38} Perkins met with McQuagge the following day. Among other things, McQuagge told Perkins and the other division managers present at the meeting (including Bowman) that Simpson was retiring as Regional Director, and that his replacement had not yet been selected. (Am. Compl. ¶ 31.)

{39} Following the group meeting, McQuagge and another HealthMarkets representative met privately with Perkins. McQuagge told Perkins that Simpson had promised one of Perkins's district managers that he could transfer to Bowman's division, and asked Perkins if he would agree. Perkins did so. (Am. Compl. ¶ 32.)

{40} Approximately two weeks later, McQuagge called Perkins and asked him to give up two profitable districts, one in Roanoke, Virginia, and the other in Greensboro, North Carolina. (Am. Compl. ¶ 33.) Perkins was unwilling to surrender the districts, but McQuagge persisted and told Perkins that if he agreed, HealthMarkets and MEGA would grant him the exclusive right to recruit sales agents and write business in the Charlotte Metrolina area and would support Perkins in opening a new district in the Southern Pines/Pinehurst area of North Carolina. (Am. Compl. ¶ 34.)

{41} In reliance upon McQuagge's promises, Perkins agreed to give up the two districts, which, in turn, were transferred to Bowman. (Am. Compl. ¶¶ 35, 38.)

{42} Plaintiffs allege that when McQuagge made these promises to Perkins, he did not intend to honor them and, in fact, did not honor them. (Am. Compl. ¶¶ 37, 39, 63, 74, 84.)

{43} Plaintiffs allege further that McQuagge, HealthMarkets, MEGA, and Bowman collaborated and conspired to fraudulently secure the transfer of the two districts to Bowman. (Am. Compl. ¶¶ 38, 78.)

{44}    The Amended Complaint also alleges a series of events and transactions by which Hoberman, acting together with McQuagge, HealthMarkets, MEGA, Hatem, and Wingate, collaborated and conspired to put Perkins out of business and shift all of his remaining districts to Hoberman.  (Am. Compl. ¶¶ 42, 59–66, 71–72, 87, 89, 98–100.)

VI.

PRINCIPLES OF LAW

A.

STANDARD OF REVIEW

{45}    The essential question on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure "is whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (citations omitted) (emphasis in original).  On a motion to dismiss, the complaint's material factual allegations are taken as true.  *Id.* (citing *Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{46}    When ruling on a Rule 12(b)(6) motion, the trial court should liberally construe the complaint and should not dismiss the action unless "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Davis v. Messer*, 119 N.C. App. 44, 51, 457 S.E.2d 902, 906–7 (1995) (citation omitted).

{47}    "'However, the court will not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" *Beasley v. Nat'l Sav. Life Ins. Co.,* 75 N.C. App. 104, 106, 330 S.E.2d 207, 208 (1985) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1969)).

{48}    A fraud claim is "subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading."  *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 903

(1988) (citing *Stanford v. Owens*, 76 N.C. App. 284, 289, 332 S.E.2d 730, 733 (1985) (quotations omitted)).

{49}    Rule 9(b) of the North Carolina Rules of Civil Procedure requires that fraud be pled with particularity.  A pleader meets the requirements of Rule 9(b) when his claim alleges the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (quoting *Terry v. Terry*, 302 N.C. App. 77, 85, 273 S.E.2d 674, 678 (1981)) (quotations omitted).

{50}    "Mere generalities and conclusory allegations of fraud will not suffice" with respect to these elements.  *Sharp v. Teague*, 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994) (quoting *Moore v. Wachovia Bank & Trust Co.*, 30 N.C. App. 390, 391, 226 S.E.2d 833, 835 (1976)).

{51}    On the other hand, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  N.C.R. Civ. P. 9(b).

B.

ANALYSIS

1.

FRAUD AS TO McQUAGGE, HEALTHMARKETS AND MEGA

{52}    To state a claim for fraud, Plaintiffs must show:  (1) a false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) that does in fact deceive, and (5) results in damage to Plaintiffs.  *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 208 S.E.2d 494, 500 (1974)).

{53}    Although a mere unfulfilled promise will not support a claim for fraud, North Carolina law carves out an exception where a defendant makes a promise with no intention of carrying it out.  *Williams v. Williams,* 220 N.C. 806, 810–11, 18 S.E.2d 364, 366–67 (1942).

{54}   In this case, Plaintiffs have set out the requisite elements of a claim for fraud.  More specifically, Plaintiffs allege that (1) sometime in mid-November 2003, McQuagge solicited Perkins to surrender two profitable districts under his control, (2) Perkins refused, (3) McQuagge then promised to grant Perkins the exclusive right to recruit sales agents and write business in the Charlotte Metrolina area, and also agreed to support Perkins in opening a new district in the Southern Pines/Pinehurst area if Perkins would surrender the two districts, (4) in reliance on these promises, Perkins relinquished the districts, (5) McQuagge did not honor his promises, and (6) McQuagge never intended to honor his promises.  (Am. Compl. ¶¶ 33-34.)

{55}   Plaintiffs further allege that HealthMarkets and MEGA are liable for fraud because McQuagge made the representations as "an employee, officer and/or managing agent of [HealthMarkets] and MEGA" (Am. Compl. ¶¶ 29, 74), and that Bowman is liable as a co-conspirator (Am. Compl. ¶¶ 38, 78).

{56}   Accordingly, consistent with the requirements of Rule 9(b), Plaintiffs have alleged the "who, what, where, and when" of the alleged fraud.

{57}   Defendants raise two principal objections to the sufficiency of the Plaintiffs' pleading.

{58}   First, although Defendants do not argue the point strenuously in their moving papers, many of the Plaintiffs' allegations regarding the disputed transactions are made "upon information and belief."  (*See* Am. Compl. ¶¶ 30, 37–38, 42–43, 51, 53–55, 59, 61, 63–64, 71–72, 74, 78, 80, 100.)

{59}    As this Court has previously noted, allegations based "upon information and belief" are generally insufficient to meet the requirements of Rule 9(b). *Lawrence v. UMLIC-Five, Corp.,* 2007 NCBC 20 ¶ 43 (N.C. Super. Ct. June 18, 2007) (citing *Breeden v. Richmond Comm. College*, 171 F.R.D. 189, 197 (M.D.N.C. 1997)).

{60}   *Breeden* explains that "[a]llegations of fraud may be made 'upon information and belief' only when the matters are particularly within the

defendants' knowledge, and facts are stated upon which the belief is founded."
*Breeden,* 171 F.R.D. at 197.

{61}    Nevertheless, Defendants do not press the point and the Court is satisfied that Plaintiffs allege sufficient facts without qualification to allow the claim to proceed.

{62}    The more glaring omission in the Plaintiffs' pleading is the lack of any facts buttressing the claim that McQuagge never intended to honor his promises to Perkins.

{63}    To support dismissal on this ground, Defendants rely on a North Carolina Court of Appeals opinion stating that a claim alleging fraudulent inducement fails as a matter of law where the plaintiff does nothing more than allege that the defendant made a promise fraudulently—that is, with no intention to carry it out— "without any essential factual basis to support this critical element[.]" *Beasley*, 75 N.C. App. at 108, 330 S.E.2d at 209.

{64}    *Beasley*, however, makes no mention of the second part of Rule 9(b), which "'relaxes the particularity requirement for conditions of the mind, such as scienter.'" *Food Lion, LLC v. Schuster Mktg. Corp.,* 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005) (quoting *Tuchman v. DSC Commc'sn, Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994)). Thus, the Court is not convinced that it resolves the precise issue here.

{65}    Rule 9(b) serves four salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . .    Second, Rule 9(b) exists to protect defendants from frivolous suits.   A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery.   Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga, Inc.*, 755 F. Supp. 1055, 1056–57 (S.D. Ga. 1990)).[2]

---

[2] Because North Carolina's Rule 9(b) is substantially similar to the federal rule, the decisions of the federal courts on this subject are instructive. *See Turner v. Duke Univ.*, 325 N.C. 152, 164, 381

{66} Plaintiffs' fraud allegations give the Defendants sufficient notice of the particular circumstances against which they must defend at trial. Plaintiffs also appear to have pre-discovery evidence of at least some of the facts supporting the claim.

{67} On the other hand, Plaintiffs' skeletal factual predicate as to the Defendants' fraudulent intent treads dangerously close to the outer limit of legal sufficiency.

{68} The Court is also concerned that Plaintiffs have shouted "fraud" on the front end of what appears to be litigation more properly confined to contract law without, it appears, substantial evidence as to the Defendants' intent. *See Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007); *Terry,* 302 N.C. at 85, 273 S.E.2d at 678 (both expressing views of courts and commentators that fraud claims are too often advanced only for their nuisance or settlement value and with little hope of success on the merits). *See also Strum v. Exxon Co.,* 15 F.3d 327, 329 (4th Cir. 1994) (rejecting plaintiff's attempt to "manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim" because it is "inconsistent both with North Carolina law and sound commercial practice.").

{69} In the end, however, I must apply the plain language of Rule 9(b) with regard to fraud's scienter element. The result is that, at least at this stage of the case, Plaintiffs' failure to allege specific facts as to the Defendants' fraudulent intent is of no legal moment, given that Rule 9(b) allows such an allegation to "be averred generally." *See Schuster,* 382 F. Supp. 2d at 799.[3]

2.

FRAUD AS TO BOWMAN

{70} Bowman also argues that Plaintiffs have failed to allege fraud as to him with the particularity required by Rule 9(b).

---

S.E.2d 706, 713 (1989) (stating that "decisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules").

[3] That the Plaintiffs' Amended Complaint meets the requirements of Rule 9(b), however, does not mean that it satisfies Plaintiffs' pleading obligations under Rule 11 of the North Carolina Rules of Civil Procedure. That question, however, is not before me at this time.

{71}   Plaintiffs, however, allege that Bowman is liable as a co-conspirator for the fraud allegedly perpetrated by McQuagge, HealthMarkets and MEGA. (Am. Compl. ¶¶ 38, 78.)

{72}   "While there is no recognized action for civil conspiracy in North Carolina, . . ., our law nevertheless permits one defrauded to recover from anyone who facilitated the fraud by agreeing for it to be accomplished." *Nye v. Oates,* 96 N.C. App. 343, 346–47, 385 S.E.2d 529, 531 (1989).

{73}   A charge of conspiracy "does no more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under the proper circumstances the acts of one may be admissible against all." *Henry v. Deen,* 310 N.C. 75, 86–87, 310 S.E.2d 326, 334 (1984). "The gravamen of the action is the resultant injury, and not the conspiracy itself." *Muse v. Morrison,* 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951).

{74}   To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to a common scheme and in furtherance of a specific objective. *Id.*

{75}   In *Muse,* our Supreme Court held that a complaint sufficiently stated a claim for civil conspiracy where it alleged a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury. *Id.*

{76}   As noted earlier, Plaintiffs here allege that Bowman is liable for fraud as a co-conspirator. This allegation imputes to Bowman the facts pled in the Amended Complaint in support of the fraud claim, which the Court has already found sufficient to withstand a motion to dismiss. Accordingly, Plaintiffs' fraud claim also survives Bowman's motion to dismiss.

3.

THE UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST CLAIMS

{77}   Perkins alleges claims of unjust enrichment against Bowman and Hoberman[4] with respect to the managers and sales agents that Perkins alleges

---

[4] The Amended Complaint is vague as to whether one or both plaintiffs are suing Bowman and Hoberman for unjust enrichment and constructive fraud. In their brief in opposition, however,

were wrongfully wrested from his control and transferred to these Defendants. (Am. Compl. ¶¶ 86–89(a)–(b).)[5]

{78}  Plaintiffs also seek to have the Court impose a constructive trust "on all earnings that have been generated and will be generated by the managers and agents wrongfully taken from Perkins by Defendants and given to, and accepted by, Bowman and Hoberman." (Am. Compl. ¶¶ 90–92.)

{79}  To recover on a claim of unjust enrichment, a party must prove that "it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *See Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citing *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

{80}  "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984).

{81}  "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received . . . ." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000).

{82}  In this case, Perkins alleges that, for over ten years, he recruited and trained sales agents and built profitable sales districts in North Carolina with the reasonable and legitimate expectation that he would benefit from those efforts. (Am. Compl. ¶¶ 87–88.)

---

Plaintiffs concede that only Perkins may pursue these equitable claims. (Pls. Mem. Opp. Mot. Dismiss 15.)

[5] Plaintiffs' Amended Complaint incorrectly labels the final paragraph of Count III alleging unjust enrichment as paragraph 62; it should be paragraph 90. To eliminate confusion, the Court herein identifies the final two paragraphs of Count III of the Amended Complaint as paragraphs 89(a) & 89(b).

{83} Perkins further alleges that Bowman and Hoberman conspired with the other Defendants to strip him of control over his agents and districts and transfer these assets to themselves. (Am. Compl. ¶¶ 38, 42, 71–72.)

{84} Defendants respond that these allegations are insufficient to allege a claim for unjust enrichment because the cases require a direct transfer of benefits whereas, in this case, Perkins did not transfer the disputed districts and agents directly to Bowman and Hoberman but instead, others acting for HealthMarkets and MEGA (including McQuagge, Wingate, and Hatem), did.[6] (Defs. Mem. Supp. Mot. Dismiss Unjustment Enrichment Cl. 5-8.)

{85} For that proposition, Defendants rely on *Effler v. Pyles,* 94 N.C. App. 349, 380 S.E.2d 149 (1989). *Effler*, however, is distinguishable. There, the defendant husband conveyed certain property to himself and his new wife as tenants by the entireties before selling it. *Id.* at 351, 380 S.E.2d at 150. The plaintiff was the husband's former mother-in-law, who claimed that the husband had promised (during the time of his first marriage) to apply the proceeds from the sale of the property to repay a loan co-signed by the plaintiff. *Id.* at 350–51, 380 S.E.2d at 150–51.

{86} The plaintiff sued the husband for breach of the oral agreement to repay the loan; plaintiff also sued the husband's new wife for unjust enrichment, claiming that she diverted to herself the sale proceeds of the property. *Id.*

{87} The trial court granted summary judgment in favor of the wife, and the Court of Appeals affirmed. The court noted that "'to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party [and] the

---

[6] The Court addresses briefly two other arguments Bowman and Hoberman press for dismissal of the unjust enrichment claim. First, they insist that Plaintiffs fail to allege "ownership or legal entitlement to the district managers or agents" and, in fact, can not do so here because the individuals involved are all independent insurance agents. (Defs.' Mem. Supp. Mot. Dismiss Unjust Enrichment Cl. 6.) Second, they argue that the benefits that would have otherwise accrued to Perkins had the status quo been maintained is speculative because they depend on the performance of the disputed districts and agents. The Amended Complaint, however, says nothing about the specifics of the principal-agent relationship in this case, nor does it address the sales prowess of the agents at issue. (Defs.' Mem. Supp. Mot. Dismiss Unjust Erichment Cl. 6.) Thus, in making these arguments, Bowman and Hoberman go beyond the four corners of the Amended Complaint, which the Court may not do when considering a Rule 12(b)(6) motion to dismiss.

defendant must have consciously accepted the benefit.'" *Id.* at 353, 380 S.E.2d at 152 (citing *Booe*, 322 N.C. at 570, 369 S.E.2d at 556) (alterations in original).

{88} According to the Court of Appeals, because the wife had received title to the house from her husband, not the plaintiff, "this [failed to] satisfy plaintiff's burden of showing that she conferred a benefit directly on defendant." *Id.*

{89} Noticeably absent from *Effler*, however, was any evidence of fraud or a civil conspiracy. In contrast, Perkins's allegation here is that the transfers of the disputed districts and insurance agents were the result of concerted action between the Defendants to achieve this end.

{90} *Effler*'s "direct benefit" rule does not address such a scenario and, accordingly, does not foreclose equitable relief on these facts. *Cf. Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,* No. 02-1425, 2003 U.S. App. LEXIS 15067, at *12–13 (4th Cir. July 30, 2003) (stating that North Carolina cases decided since *Effler* suggest that "it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction").

{91} Whether Perkins is entitled to equitable relief is not before me; the Court simply holds that Perkins has alleged facts sufficient to allow the unjust enrichment claim to go forward.

{92} Finally, Bowman and Hoberman's sole argument regarding the merits of Perkins's claim for a constructive trust is that it rises and falls on the validity of the unjust enrichment claim. The Court having found that Perkins may proceed on the latter claim, there is no basis for dismissing the claim for constructive trust.[7]

---

[7] This particular claim is overkill because, as a practical matter, Perkins is not looking to recover specifically identifiable property, but instead seeks money damages for the profits he allegedly lost following the transfer of the disputed districts and insurance agents. Nevertheless, it appears that North Carolina law allows a claim for constructive trust, even where the property sought to be impressed is a fungible asset. *See Tractor & Auto Supply Co., Inc. v. Fayetteville Tractor and Equip. Co.,* 2 N.C. App. 531, 543, 163 S.E.2d 510, 517 (1968) (holding that a party may follow "the money fraudulently obtained wherever they could trace it and reclaim it in the hands of any person who had not received it in good faith and given value therefor, on the ground that there was a constructive trust in the money in their favor").

## VII.

## CONCLUSIONS OF LAW

{93}   Plaintiffs have satisfied the pleading requirements for fraud.

{94}   Perkins has pled a legally sufficient claim for unjust enrichment.

{95}   Perkins's claim for constructive trust should not be dismissed.

## VIII.

## ORDER

{96}   The Court **DENIES** the Motions to Dismiss.

This the 30th day of July, 2007.